| | |
|---|---|
| JAMAR PIERRE MULLINS, | Case No. 25-CV-3940 (PJS/JFD) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| MINNESOTA DEPARTMENT OF CORRECTIONS; MCF-STILLWATER; D.O.C. COMMISSIONER PAUL SCHNELL; DEPUTY COMMISSIONER SAFIA KHAN; DEPUTY COMMISSIONER CHYSTAL BRAKKE; ASSISTANT COMMISSIONER KELLY MITCHELL; MCF-STILLWATER WARDEN WILLIAM BOLIN; ASSISTANT WARDEN DAN MOE; SGT. KEITH WIEKEN; C.O. DOEL SANTIAGO-SANABRIA; C.O. DONALD JOHNSON: C.O. GERARDO PERALES; C.O. ANDREW MEYERS; LT. JOEL HARRINGTON; C.O. MICHAEL BROWN; K9 KORY CLAUSEN; SGT. ELIZABETH SCHNEIDER; C.O. JUSTIN WOOD; C.O. DANIEL GORMAN; SGT. JACOB WINBERG; JUSTIN D. MEYER; and RN (NURSE) SHANDA DETSCH, in their official and individual capacities, | |
| Defendants. | |

Plaintiff Jamar Pierre Mullins contends that defendants failed to protect him from being assaulted by other inmates and failed to provide him with constitutionally adequate medical care following those assaults. (*See generally* Am. Compl., Dkt. No. 35.) Mr. Mullins is a prisoner and applied for *in forma pauperis* ("IFP") status when he filed suit.

After Mr. Mullins paid the initial partial filing fee, the Court reviewed his complaint pursuant to 28 U.S.C. § 1915A. The Court recommended that much of Mr. Mullins's complaint be dismissed (*see* Dkt. No. 6), after which Mr. Mullins filed an Amended Complaint as a matter of right pursuant to Federal Rule of Civil Procedure 15(a)(1)(A). The Court then vacated its first recommendation as moot (*see* Dkt. No. 34) and now screens the Amended Complaint pursuant to 28 U.S.C. § 1915A(a).

Mr. Mullins's negligence claim should go forward. The part of his claim for failure to provide constitutionally adequate medical care that seeks prospective relief against defendants in their official capacities should also go forward. The Court recommends that Mr. Mullins's other claims be dismissed, including his claim against defendants in their individual capacities alleging failure to provide constitutionally adequate medical care and Mr. Mullins's request for monetary damages.

## I. LEGAL STANDARD

Pursuant to 28 U.S.C. § 1915A—a part of the Prison Litigation Reform Act—the Court must dismiss a complaint, or any portion of it, if it contains claims that: (1) are frivolous, malicious, or fail to state a claim upon which relief may be granted; or (2) seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

A claim is frivolous if "it lacks an arguable basis either in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim fails to state a claim upon which relief may be granted if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a "pro se complaint must be liberally construed," *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d

843, 849 (8th Cir. 2014), pro se plaintiffs must allege sufficient facts to "nudge[] their claims across the line from conceivable to plausible or their complaint must be dismissed," *Twombly*, 550 U.S. at 569-70.

## II. BACKGROUND

The following facts are alleged in the Amended Complaint. On April 10, 2024, Mr. Mullins was assaulted by other inmates. When Corrections Officer ("CO") Andrew Meyers responded, he found Mr. Mullins on the ground, unconscious, and not breathing. Shortly thereafter, CO Doel Santiago-Sanabria and CO Donald Johnson arrived to assist; they put mechanical wrist restraints on Mr. Mullins and escorted him from the unit. During this escort, CO Santiago-Sanabria asked Mr. Mullins if he required a wheelchair, but before Mr. Mullins could respond, another inmate assaulted him again. During the course of this second assault, CO Santiago-Sanabria and CO Johnson let go of Mr. Mullins, allowing him to fall to the floor. Eventually, both inmates—Mr. Mullins and his attacker—were restrained and placed in segregation.

After the assault, Mr. Mullins was examined by Nurse Shanda Detsch. Mr. Mullins's records do not indicate whether she evaluated him for a concussion, but he was nevertheless scheduled for a follow-up re-evaluation of post-concussion symptoms 12 days later. Before this appointment, however, a nurse examined Mr. Mullins after Mr. Mullins's mother conveyed concerns for his welfare. The next day, Mr. Mullins was transported to the emergency department of a hospital after almost falling down from extreme dizziness. At the hospital, he was diagnosed with a concussion, fracture of the medial wall of his left orbit, and a dental injury to a front tooth. The report did not indicate that a follow-up

3

appointment was necessary unless his symptoms warranted it. Mr. Mullins had a CT scan on July 25, 2024. On December 18, 2024, he was seen by a neurologist who recommended that he start concussion therapy and take amitriptyline as a daily preventative. As of October 2025, Mr. Mullins had not started concussion therapy.

On April 5, 2025, nearly one year after the assault, he was seen at the M Health Fairview Eye Clinic for persistent pain, headaches, and watery eyes. The report shows that doctors reviewed his 2024 CT exam and concluded that surgery would not alleviate his pain. Mr. Mullins continues to see providers regarding his daily headaches and eye pain.

Mr. Mullins asserts that these allegations give rise to four claims for relief: (1) failure to protect him from harm in violation of the Eighth Amendment, (2) failure to provide him with constitutionally adequate medical care in violation of the Eighth Amendment, (3) negligence, and (4) intentional infliction of emotional distress.

## III.   ANALYSIS

### A.   Eighth Amendment Claims

Mr. Mullins's Eighth Amendment claims are brought pursuant to 42 U.S.C. § 1983. To establish a § 1983 claim, "a plaintiff must allege sufficient facts to show '(1) that the defendant(s) acted under color of state law, and (2) that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right.'" *Zutz v. Nelson*, 601 F.3d 842, 848 (8th Cir. 2010) (quoting *Schmidt v. City of Bella Villa*, 557 F.3d 564, 571 (8th Cir. 2009)). Further, "[p]ublic servants may be sued under section 1983 in either their official capacity, their individual capacity, or both." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999) (citing *Murphy v. Arkansas*, 127 F.3d 750, 754 (8th Cir.

1997)). "Claims against government actors in their individual capacities differ from those in their official capacities as to the type of conduct that is actionable and as to the type of defense that is available." *Gorman v. Bartch*, 152 F.3d 907, 914 (8th Cir. 1998) (citing *Hafer v. Melo*, 502 U.S. 21 (1991)).

Here, Mr. Mullins asserts two violations of the Eighth Amendment: failure to protect from harm and failure to provide constitutionally adequate medical care. Mr. Mullins, moreover, names each defendant in both that defendant's individual capacity and in their official capacity as an agent of the entity for which he or she works—namely, the State of Minnesota.

### 1. Failure to Protect

"To prevail on a failure-to-protect claim, an inmate must make two showings: (1) an objective component, that there was a substantial risk of harm to the inmate, and (2) a subjective component, that the prison official was deliberately indifferent to that risk." *Axelson v. Watson*, 999 F.3d 541, 546 (8th Cir. 2021) (citing *Patterson v. Kelley*, 902 F.3d 845, 851 (8th Cir. 2018)). "Deliberate indifference in this context means that prison officials 'subjectively knew of and disregarded [the inmate's] safety risk." *Id.* (quoting *Smith v. Ark. Dep't of Corr.*, 103 F.3d 637, 644 (8th Cir. 1996)).

Mr. Mullins's failure to protect claim does not make it past the first element. To establish a failure to protect claim, "plaintiffs must first demonstrate that defendants knew of the substantial risk of serious harm to the victim." *Letterman v. Does*, 789 F.3d 856, 862 (8th Cir. 2015). "A party need not necessarily show that the actor actually knew of the substantial risk of harm to an inmate; the district court can infer knowledge if the risk was

obvious." *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 842-43 (1994)) (listing cases). Mr. Mullins does neither. He asserts no particularized facts establishing that prison officials, let alone the defendants, knew that his unidentified assailants posed a substantial risk of harm to him, nor does he describe anything about the circumstances surrounding the assault, Mr. Mullins, or the assailants that would suggest that the assailants' risk to Mr. Mullins was obvious. Mr. Mullins, therefore, has failed to assert a plausible constitutional violation. The failure to protect claim should therefore be dismissed on that basis.

### 2. Failure to Provide Constitutionally Adequate Medical Care

Mr. Mullins specifically asserts that Nurse Detsch, Sgt. Schneider, Sgt. Woods, CO Meyers, CO Winberg, "and others failed to call for medical help and or provide [him] with prompt medical treatment despite repeated complaints, visible injuries and documented trauma." (Compl. at 6.)

The Court applies the Eighth Amendment "deliberate indifference" standard to this claim, as well. As noted above, "[d]eliberate indifference" has both an objective and a subjective component. To establish this standard in the medical context, "[t]he plaintiff must demonstrate (1) that he suffered from objectively serious medical needs and (2) prison officials actually knew of but deliberately disregarded those needs." *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)). "The prisoner must show more than negligence, more than even gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Id.* (quoting *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995)).

### a. Individual Capacity Claims

Mr. Mullins identifies each defendant in both their individual capacity and in their official capacity as an agent of the State of Minnesota. Starting with the individual capacity claims, "[p]ersonal-capacity suits . . . seek to impose individual liability upon a government officer for actions taken under color of state law." *Hafer*, 502 U.S. at 25. Thus, in a § 1983 action such as this one, "a plaintiff must plead that each Government-official defendant, *through the official's own individual actions*, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (emphasis added).

Mr. Mullins names five defendants as to the claim for failure to provide constitutionally adequate medical care, but he asserts factual allegations against only two of them: Nurse Detsch and CO Meyers. According to Mr. Mullins, CO Meyers was the first to respond to the initial assault and found him on the ground, unconscious, and Nurse Detsch evaluated him following the assaults but did not specifically note in her report that she evaluated him for a concussion. Even if Mr. Mullins's medical needs at this point were "so obvious that even a layperson would easily recognize the necessity for a doctor's attention," *DeRossitte v. Correct Care Solutions, LLC*, 22 F.4th 796, 802 (8th Cir. 2022), Mr. Mullins asserts no facts suggesting that either CO Meyers or Nurse Detsch was deliberately indifferent to those needs.

Indeed, Mr. Mullins asserts no facts describing what CO Meyers purportedly did or failed to do to treat his medical conditions. Further, with respect to Nurse Detsch's report, Mr. Mullins does *not* assert that Nurse Detsch did not treat him following the assaults. Rather, it appears he merely claims that the report was inadequate because it does

not specifically detail whether he was evaluated for a concussion. (Compl. at 4.) Regardless of whether Nurse Detsch did, in fact, evaluate him for a concussion notwithstanding the omission in her report, Mr. Mullins was scheduled for a follow-up appointment to evaluate his post-concussion symptoms twelve days later. (*Id.*) To the extent that Mr. Mullins claims that the medical professionals should have treated him differently immediately following the assault, he does not provide any particular facts detailing what this treatment should have entailed or how the treatment he received was inadequate. More to the point, moreover, Mr. Mullins has "no constitutional right to receive a particular or requested course of treatment." *Dulaney*, 132 F.3d at 1239. Mr. Mullins's individual capacity claims with respect to Nurse Detsch and CO Meyers should therefore fail as a matter of law.

While Mr. Mullins also specifically identifies Sgt. Schneider, Sgt. Woods, and CO Winberg as defendants as to this claim, he does not describe any particular facts detailing what these defendants did or failed to do in violation of his right to constitutionally adequate medical care. *See Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006) ("Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights."). Nor does Mr. Mullins describe what "and others" specifically did or failed to do in violation of his constitutional rights. Mr. Mullins's individual capacity claims with respect to the claim for failure to provide constitutionally adequate medical care should therefore be dismissed for failure to state a plausible claim for relief.

**b.     Official Capacity Claims**

This leaves Mr. Mullins's official capacity claims. "Suits against state officials in their official capacity [] should be treated as suits against the State." *Hafer*, 502 U.S. at 25. There are two problems with Mr. Mullins's official capacity claims.

As a threshold matter, Mr. Mullins identifies the Department of Corrections ("DOC") as a defendant to this action. The Eleventh Amendment provides "states, and state agencies, with immunity not only from suits brought by citizens of other states, but also from suits brought by their own citizens." *Doe v. Nebraska*, 345 F.3d 593, 598 (8th Cir. 2003) (internal citation omitted). While Eleventh Amendment sovereign immunity does not apply where "the state has waived its immunity or Congress has abrogated the state's immunity under a valid exercise of Congressional power," *Smith v. Beebe*, 123 F. App'x 261, 262 (8th Cir. 2005) (per curiam), neither exception applies here. Congress has not abrogated state immunity for § 1983 actions, *see Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989), and the State of Minnesota has not consented to be sued under § 1983, *see Semler v. Ludeman*, Case No. 09-CV-0732 (ADM/SRN), 2010 WL 145275, at *7 (D. Minn. Jan. 8, 2010). Accordingly, sovereign immunity bars Mr. Mullins's § 1983 claims against the DOC, and those claims should be dismissed on that basis.

Second, Mr. Mullins requests monetary, injunctive, and declarative relief. (Compl. at 8.) But "[n]either a state nor its officials acting in their official capacities are 'persons' under § 1983" when sued for money damages. *Will*, 491 U.S. at 71. Rather, state officials may be sued in their official capacities only for prospective injunctive relief. *Ex parte Young*, 209 U.S. 123, 157-60 (1908); *Fond du Lac Band of Chippewa Indians v. Carlson*,

68 F.3d 253, 255 (8th Cir. 1995) ("*Ex parte Young* recognized that suits may be brought in federal court against state officials in their official capacities for prospective injunctive relief to prevent future violations of federal law."). Mr. Mullins's relief is therefore limited to prospective relief, and his request for money damages should therefore be dismissed.

**B.      State Law Causes of Action**

**1.      Intentional Infliction of Emotional Distress**

The Minnesota state tort of intentional infliction of emotional distress requires proof that: "(1) the conduct complained of was extreme and outrageous; (2) the conduct was intentional or reckless; (3) the conduct caused emotional distress; (4) and the distress suffered was severe." *Kelly v. City of Minneapolis*, 598 N.W.2d 657, 663 (Minn. 1999) (citing *Hubbard v. United Press Int'l, Inc.*, 330 N.W.2d 428, 438-39 (Minn. 1983)). The tort "is sharply limited to cases involving particularly egregious facts." *Langeslag v. KYMN Inc.*, 664 N.W.2d 860, 864 (Minn. 2003).

Here, even if Mr. Mullins asserted sufficient facts establishing that the defendants' conduct constitutes "extreme and outrageous conduct" that is "utterly intolerable to the civilized community," *id.* at 866 (citation omitted), and that the conduct was intentional or reckless, he has failed to allege *any* particularized facts suggesting that this conduct caused him to suffer emotional distress or that the distress he suffered was severe (elements three and four). *See id.* at 868 ("Just as the plaintiff must meet a high threshold of proof in proving the extreme nature of conduct, the plaintiff must also meet a high threshold of proof regarding the severity of the mental distress."). Mr. Mullins merely asserts that he suffered "severe emotional distress and mental anguish." (Compl. at 7.) Such conclusory

10

allegations fall far short of plausibly alleging a claim for relief, particularly considering that Minnesota law defines severe emotional distress as "so severe that no reasonable man could be expected to endure it." *Langeslag*, 664 N.W.2d at 869 (citation omitted).

### 2. Negligence

Mr. Mullins alleges that defendants owed him a duty of care to provide adequate medical treatment and that they breached that duty by delaying treatment and by denying him recommended concussion therapy. The Court does not recommend dismissal of this claim under 28 U.S.C. § 1915A(b).

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED**:

1. The following claims be **DISMISSED WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1915A(b)(1):

   a. Mr. Mullins's claim alleging a failure to protect him from harm in violation of the Eighth Amendment; and

   b. Mr. Mullins's claim of intentional infliction of emotional distress.

2. Further, with respect to Mr. Mullins's claim alleging a failure to provide constitutionally adequate medical care:

   a. The individual capacity claims against Nurse Detsch, Sgt. Schneider, Sgt. Woods, CO Meyers, and CO Winberg should be **DISMISSED WITHOUT PREJUDICE** for failure to state a plausible claim for relief, *see* 28 U.S.C. § 1915A(b)(1);

b.    The claims against the Department of Corrections should be **DISMISSED WITH PREJUDICE** for lack of subject matter jurisdiction, *see* Fed. R. Civ. P. 12(h)(3); and

c.    The official capacity claims for monetary relief should be **DISMISSED WITH PREJUDICE** for lack of subject matter jurisdiction, *see* Fed. R. Civ. P. 12(h)(3).

Dated: February 12, 2026

*s/ John F. Docherty*
JOHN F. DOCHERTY
United States Magistrate Judge

**NOTICE**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).